

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00759-CV

**IN THE INTEREST OF Z.L.M.C.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA01569
Honorable John D. Gabriel Jr., Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                 Patricia O. Alvarez, Justice
                 Beth Watkins, Justice

Delivered and Filed: April 15, 2020

AFFIRMED

This is an accelerated appeal of the trial court's order denying Dad's request for pretrial genetic testing and dismissing Dad's suit to terminate the parent-child relationship. On appeal, Dad argues the trial court erred by dismissing his suit because his suit was timely, he established a prima facie case for termination, and the trial court could not have considered the best interest of the child in its decision. We affirm the trial court's order.

**BACKGROUND**

Mom and Dad were married in July 2003, but they separated in February 2004.[1] Within a few weeks, Z.L.M.C. was born. Mom requested child support, and the Attorney General's office initiated a suit.

In July 2004, Dad was served, and representing himself, he answered. His answer stated that "I am at this time requesting a Patern[ity] Test be completed to verify the origin of the child." Based on Dad's written request, Z.L.M.C. was tested, but Dad did not have himself tested.

In October 2004, Dad personally appeared in court and agreed to orders that adjudicated him to be Z.L.M.C.'s father. Mom and Dad divorced in September 2009.

In 2019, after Dad remarried and he and his second wife were unable to conceive a child naturally, he underwent fertility testing which showed he was infertile. Subsequently, Dad and Z.L.M.C. submitted genetic samples through a mail order genetic testing service, and the test results indicated Dad was not Z.L.M.C.'s genetic father.

Dad initiated a suit to terminate the parent-child relationship, and he asked the court to order genetic testing. After Dad testified at the pretrial hearing, Mom did not call any witnesses. Instead, she moved for a directed verdict. The trial court denied Dad's motion for genetic testing and dismissed Dad's suit. Dad asked the court to make findings of fact and conclusions of law, which it did.

Dad appeals and asserts the trial court erred in dismissing his suit for three reasons. First, his suit was timely; second, he established a prima facie case for termination; and third, the trial court improperly considered the best interest of the child in its decision. Because each of the three issues involves a Family Code provision, we present it first.

---

[1] We use aliases for Appellant, the mother, and the child. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

## FAMILY CODE SECTION 161.005

Section 161.005 provides methods for a parent to seek to terminate the parent-child relationship.

(a) A parent may file a suit for termination of the petitioner's parent-child relationship. Except as provided by Subsection (h), the court may order termination if termination is in the best interest of the child.

(b) If the petition designates the Department of Family and Protective Services as managing conservator, the department shall be given service of citation. The court shall notify the department if the court appoints the department as the managing conservator of the child.

(c) Subject to Subsection (d), a man may file a suit for termination of the parent-child relationship between the man and a child if, without obtaining genetic testing, the man signed an acknowledgment of paternity of the child in accordance with Subchapter D, Chapter 160, or was adjudicated to be the father of the child in a previous proceeding under this title in which genetic testing did not occur. The petition must be verified and must allege facts showing that the petitioner:

(1) is not the child's genetic father; and

(2) signed the acknowledgment of paternity or failed to contest parentage in the previous proceeding because of the mistaken belief, at the time the acknowledgment was signed or on the date the court order in the previous proceeding was rendered, that he was the child's genetic father based on misrepresentations that led him to that conclusion.

(d) A man may not file a petition under Subsection (c) if:

(1) the man is the child's adoptive father;

(2) the child was conceived by assisted reproduction and the man consented to assisted reproduction by his wife under Subchapter H, Chapter 160; or

(3) the man is the intended father of the child under a gestational agreement validated by a court under Subchapter I, Chapter 160.

(e) A petition under Subsection (c) must be filed not later than the second anniversary of the date on which the petitioner becomes aware of the facts alleged in the petition indicating that the petitioner is not the child's genetic father.

(e-1) Expired.

(f) In a proceeding initiated under Subsection (c), the court shall hold a pretrial hearing to determine whether the petitioner has established a meritorious prima facie case for termination of the parent-child relationship. If a meritorious prima facie claim is established, the court shall order the petitioner and the child to submit to genetic testing under Subchapter F, Chapter 160.

(g) If the results of genetic testing ordered under Subsection (f) identify the petitioner as the child's genetic father under the standards prescribed by Section 160.505 and the results of any further testing requested by the petitioner and ordered by the court under Subchapter F, Chapter 160, do not exclude the petitioner as the child's genetic father, the court shall deny the petitioner's request for termination of the parent-child relationship.

(h) If the results of genetic testing ordered under Subsection (f) exclude the petitioner as the child's genetic father, the court shall render an order terminating the parent-child relationship.

TEX. FAM. CODE ANN. § 161.005(a)–(h).

### TIMELINESS OF SUIT

In his first issue, Dad argues his suit was not time-barred because genetic testing did not occur in the 2004 child support suit and he filed the present parental-rights termination suit within two years of when he became aware of facts that indicated he was not Z.L.M.C.'s genetic father. He insists there is no evidence to support the trial court's finding that he became aware of facts indicating he was not Z.L.M.C.'s genetic father before he took the mail order genetic test in 2019.

Mom argues the evidence conclusively establishes Dad became aware of facts that indicated he was not Z.L.M.C.'s genetic father in 2004, his present suit was not filed until after the two-year deadline, and genetic testing occurred because Z.L.M.C. was tested.

We begin with the applicable standard of review.

### A. Standard of Review

"In a bench trial, the trial court, as the factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Alonso v. Alvarez*, 409 S.W.3d 754, 757 (Tex. App.—San Antonio 2013, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.). "A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019); *accord Thompson v. Smith*, 483 S.W.3d

87, 93 (Tex. App.—Houston [1st Dist.] 2015, no pet.). If a party challenges a finding when there is a reporter's record, "the trial court's findings of fact are binding if the evidence supports them." *Thompson*, 483 S.W.3d at 93.

"When conducting a legal sufficiency review, we credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We "consider evidence in the light most favorable to the [trial court's finding] and indulge every reasonable inference that would support it." *City of Keller*, 168 S.W.3d at 822; *accord Thompson*, 483 S.W.3d at 93. If there is more than a scintilla of evidence to support the trial court's finding, the legal sufficiency challenge fails. *Tex. Outfitters Ltd.*, 572 S.W.3d at 653 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).

**B.     Discussion**

Dad could seek to terminate the parent-child relationship with Z.L.M.C. by filing suit "not later than the second anniversary of the date on which [Dad became] aware of the facts" that he was not Z.L.M.C.'s genetic father. *See* TEX. FAM. CODE ANN. § 161.005(e); *In re D.I.P.*, 421 S.W.3d 106, 109 (Tex. App.—San Antonio 2013, pet. denied) (applying the anniversary statute). The trial court found Dad became aware of facts indicating he was not Z.L.M.C.'s father on July 26, 2004, but Dad contends there is no evidence to support the finding.

It is undisputed that, in his July 26, 2004 answer, Dad "request[ed] a Paternal Test be completed to verify the origin of the child." But at the 2019 hearing, Dad testified that he did not become aware that Z.L.M.C. was not his child until 2019 when he took a mail order DNA test that showed he was not her genetic father. *Cf.* TEX. FAM. CODE ANN. § 161.005(e) (imposing a two-year anniversary deadline); *In re D.I.P.*, 421 S.W.3d at 109 (applying the deadline).

The trial court was free to credit Dad's written request in 2004 for genetic testing "to determine the origin of the child" as evidence that he was aware that Z.L.M.C. might not be his genetic offspring. *See In re F.M.*, 536 S.W.3d at 844 (factfinder weighs evidence).

Viewing the evidence in the light most favorable to the finding, *see Thompson*, 483 S.W.3d at 93, we conclude the evidence was legally sufficient to support the trial court's finding that, in 2004, Dad was aware of facts that indicated he was not Z.L.M.C.'s genetic father, *see* TEX. FAM. CODE ANN. § 161.005(e); *In re D.I.P.*, 421 S.W.3d at 109. Given Dad did not file his suit to terminate the parent-child relationship until 2019, we conclude Dad's suit did not meet the two-year statutory deadline, and his suit was time-barred. *See* TEX. FAM. CODE ANN. § 161.005(e); *In re D.I.P.*, 421 S.W.3d at 109. We overrule Dad's first issue.

## MERITORIOUS PRIMA FACIE CASE

In his second issue, Dad argues the trial court erred in concluding he did not establish a meritorious prima facie case under section 161.005(f). Mom contends that Dad failed to meet his prima facie burden because there was no evidence of any misrepresentation on her part and Z.L.M.C. was genetically tested.

### A. Prima Facie Burden, Standard of Review

In a case where a man has been adjudicated to be the father of a child "without obtaining genetic testing," to obtain a court order requiring the man and the child to submit to genetic testing, the man must "establish[] a meritorious prima facie case for termination of the parent-child relationship." TEX. FAM. CODE ANN. § 161.005(c), (f); *accord In re D.I.P.*, 421 S.W.3d at 109. "[P]rima facie evidence is 'merely that which suffices for the proof of a particular fact until contradicted and overcome by other evidence.'" *In re C.E.*, 391 S.W.3d 200, 203 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (quoting *Dodson v. Watson*, 220 S.W. 771, 772 (Tex. 1920)). "The prima facie standard requires only the minimum quantum of evidence necessary to support

a rational inference that the alleged fact is true." *In re J.K.B.*, 439 S.W.3d 442, 450 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *In re C.E.*, 391 S.W.3d at 203). "A determination of whether a party has presented prima facie proof of a meritorious claim is a question of law that we review de novo." *In re D.I.P.*, 421 S.W.3d at 109; *accord In re J.K.B.*, 439 S.W.3d at 450.

## B.      Discussion

Dad argues he presented sufficient prima facie evidence to support an inference that Mom's misrepresentation caused him to believe he was Z.L.M.C.'s father. *See In re J.K.B.*, 439 S.W.3d at 450 (rational inference). But at the hearing, Dad was asked whether Mom made any misrepresentation to him about Z.L.M.C.'s parentage.

Dad testified that Mom never told him anything that would lead him to believe that Z.L.M.C. was <u>not</u> his genetic offspring, but he offered no evidence that Mom ever made any misrepresentation to him that he was Z.L.M.C.'s genetic father. *Contra* Tex. Fam. Code Ann. § 161.005(c) (requiring misrepresentations that caused the man to believe he is the child's genetic father); *In re C.E.*, 391 S.W.3d at 203–04. And Dad presented no evidence that Mom knew or suspected in 2004 that Dad was not Z.L.M.C.'s genetic father. Further, the trial court found that, in 2004, when Dad requested genetic testing, Z.L.M.C. was genetically tested, but Dad did not present himself for testing. Moreover, it is undisputed that Dad did not file his suit until 2019, about fifteen years after his earlier written request for genetic testing "to determine the origin of the child."

Having considered the evidence, we conclude Dad failed to meet his burden to establish a meritorious prima facie case. *See* Tex. Fam. Code Ann. § 161.005(c), (f); *In re D.I.P.*, 421 S.W.3d at 108. We overrule Dad's second issue.

**BEST INTEREST OF THE CHILD**

In his third issue, Dad argues the trial court erred by considering the best interest of the child, but we need not address his argument. Even if we assume the trial court could not consider the best interest of the child in determining whether to order genetic testing, we may not reverse the trial court's order "unless the error complained of . . . probably caused the rendition of an improper judgment." *See* TEX. R. APP. P. 44.1(a); *In re C.E.M.*, 64 S.W.3d 425, 429 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

Neither of Dad's first two issues require any consideration of the best interest of the child, and each supports the trial court's order denying genetic testing and dismissing Dad's suit. *See* TEX. FAM. CODE ANN. § 161.005; *In re D.I.P.*, 421 S.W.3d at 109. Assuming without deciding that the trial court's consideration of the best interest of the child was error, Dad has failed to show how the trial court's finding probably caused the rendition of an improper judgment. *Contra* TEX. R. APP. P. 44.1(a); *In re C.E.M.*, 64 S.W.3d at 429. We overrule Dad's third issue.

**CONCLUSION**

Having considered the evidence under the appropriate standards of review, we conclude Dad's suit under Family Code section 161.005(c) to terminate the parent-child relationship was time-barred and he failed to meet his burden to establish a meritorious prima facie case. Thus, the trial court did not err in denying his motion for genetic testing and dismissing his suit. Even if the trial court erred in considering the best interest of the child, its error, if any, was harmless. We affirm the trial court's order.

Patricia O. Alvarez, Justice